**CASE NO. 22-4477**

**IN THE**

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

————————————

UNITED STATES OF AMERICA,

*Plaintiff - Appellee,*

v.

ALEXANDER JUAREZ-SANCHEZ,

*Defendant - Appellant.*

————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
AT BALTIMORE

————————————

**OPENING BRIEF OF APPELLANT**

————————————

Alfred Guillaume, III
LAW OFFICES OF ALFRED GUILLAUME III
6305 Ivy Lane
Suite 700
Greenbelt, MD 20770
202-321-0549
ag3law@gmail.com

*Counsel for Defendant - Appellant*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ iii

JURISDICTIONAL STATEMENT ................................................................1

ISSUES PRESENTED FOR REVIEW .........................................................2

STATEMENT OF THE CASE.......................................................................3

   I.    THE CHARGES................................................................................3

   II.   PROCEDURAL HISTORY ...............................................................3

   III.  RELEVANT FACTS..........................................................................4

SUMMARY OF THE ARGUMENT .............................................................7

ARGUMENT .................................................................................................8

   I.    Insufficient Probable Cause Existed to Search Mr. Juarez-
       Sanchez's Cell Phone ......................................................................8

       A. Standard of Review ....................................................................8

       B. Mr. Juarez-Sanchez's Behavior During the Traffic Stop Did
          Not Establish Probable Cause to Search His Cellular Phones.............8

       C. The Warrant Affidavit Does Not Provide a Sufficient Nexus
          Between Mr. Juarez's Cell Phone and the Alleged Criminal
          Conduct.......................................................................................11

   II.   The District Court Abused Its Discretion by Qualifying Trooper
       Miller as an Expert Witness in Illicit Drug Trafficking...........................12

       A. Standard of Review ....................................................................12

B.  Trooper Miller's Prior Experience Was Insufficient for Him to Qualify as an Expert Witness ............................................................12

C.  The instruction given by the district court was insufficient to prevent the strong likelihood of jury confusion ..................................14

III.  The prosecutor's remarks in closing argument that Mr. Sanchez's text message about "tacos" was a code to describe his participation in an international drug transaction unduly prejudiced Mr. Juarez-Sanchez ..........................................................................................................16

A.  Standard of Review .............................................................................16

B.  The prosecutor's comments during closing argument constitute reversible error .................................................................................16

C.  The Prosecutor's Comments Were Not Harmless Error ....................18

CONCLUSION....................................................................................................19

REQUEST FOR ORAL ARGUMENT ................................................................21

# TABLE OF AUTHORITIES

## Cases

*United States v. Garcia*,
752 F.3d 382 (4th Cir. 2014) ................................................................ 12, 13, 14

*United States v. Gondres-Medrano*,
3 F.4th 708 (4th Cir. 2021) ...................................................................... 8

*United States v. Orozco*,
41 F.4th 403 (4th Cir. 2022) ............................................................ 8, 9, 11

*United States v. Saint Louis*,
889 F.3d 145 (4th Cir. 2018) ...................................................................... 16

*United States v. Smith*,
919 F.3d 825 (4th Cir. 2019) ...................................................................... 14

*United States v. Wilson*,
135 F.3d 291 (4th Cir. 1998) ................................................................ 16, 17

## Statutes

8 U.S.C. § 1326 ...................................................................................... 1

18 U.S.C. § 3231 .................................................................................... 1

18 U.S.C. § 3742 .................................................................................... 1

21 U.S.C. § 841 ...................................................................................... 1

21 U.S.C. § 846 ...................................................................................... 1

28 U.S.C. § 1291 .................................................................................... 1

# JURISDICTIONAL STATEMENT

On May 19, 2021, a grand jury in the District of Maryland returned a four-count indictment against Alexander Juarez-Sanchez, charging him with Conspiracy to Distribute Controlled Substances, in violation of 21 U.S.C. §846; Possession with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §841; and two counts of Re-entry After Deportation, in violation of 8 U.S.C. §1326(a). The United States District Court for the District of Maryland was a court of original subject matter jurisdiction pursuant to 18 U.S.C. §3231. The United States Court of Appeals for the Fourth Circuit has jurisdiction over this appeal pursuant to 28 U.S.C. §1291 and 18 U.S.C. §3742.

## ISSUES PRESENTED FOR REVIEW

I.    Alexander Juarez-Sanchez was the passenger in a car that was searched by the Maryland State Police where suspected narcotics were found hidden in the vehicle.  Mr. Juarez-Sanchez was arrested, and his cellular phones were searched.  Did the court err in determining that sufficient probable cause existed to search Mr. Juarez-Sanchez's cell phones?

II.    Trooper Miller testified as a fact witness about his actions during the traffic stop and search of a vehicle.  Miller also testified as an expert witness in "illicit drug trafficking." Were the court's instructions explaining the difference between his fact and expert testimony sufficient to prevent the strong likelihood of jury confusion?

III.    During closing argument, the prosecutor argued that the use of the word "tacos" in a text message on Mr. Juarez-Sanchez's phone was a code about a drug transaction between him and an unknown Mexican coconspirator.  The government did not produce a witness to offer an opinion to the meaning of text message during the trial.  Did the prosecutor's argument taint the jury and unduly prejudice Mr. Juarez-Sanchez?

## STATEMENT OF THE CASE

### I.    THE CHARGES

On May 19, 2021, a grand jury in the District of Maryland returned a four-count indictment against Alexander Juarez-Sanchez and Domingo Ramirez-Roblero, charging each with Conspiracy to Distribute Controlled Substances, and immigration related charges. J.A. 13-18. Both defendants were detained pending trial.

### II.    PROCEDURAL HISTORY

On September 13, 2021, counsel for Mr. Juarez-Sanchez filed motion(s) to suppress evidence. J.A. 19-26. On April 12, 2022, the government filed a memorandum in opposition to the defense suppression motions. J.A. 27-54. On April 25, 2022, the Honorable Richard Bennett denied the defense's suppression motions after a contested hearing. On May 11, 2022, counsel for Mr. Sanchez filed a motion in limine which sought to exclude certain evidence from trial. J.A. 173-176. On May 14, 2022, the government filed an opposition to the defense motion in limine. J.A. 177-183. On May 17, 2022, the Honorable Julie Rubin granted in part and denied in part the defense motion in limine. On May 24, 2022, Mr. Juarez-Sanchez proceeded to trial by jury with the Honorable Julie Rubin presiding. On May 31, 2022, the jury returned a verdict of guilty as to all four counts against Mr. Juarez-Sanchez.

## III.   RELEVANT FACTS

On August 5, 2020, Trooper Craig Miller of the Maryland State Police pulled over a white Honda Civic driven by Domingo Ramirez-Roblero on Interstate 81 near Hagerstown, Maryland for following too closely behind another vehicle.  J.A. 93.  Alexander Juarez-Sanchez, appellant, was seated in the front passenger seat. J.A. 94.  The driver of the vehicle did not have a license and attempted to find the registration in the glove compartment.  J.A. 98.  The driver did not know the name of the person the car was registered to.  *Id*.   The driver told Trooper Miller that he lost his identification and passport.  J.A. 100.  The driver told Miller that the front passenger's name was Miguel, but he didn't know his last name.  *Id*.   While speaking with Trooper Miller, the driver's hands were shaking, trembling and he began to sweat.  J.A. 101.

Trooper Miller called for a K9 officer to conduct a vehicle scan.  J.A. 102.  A K9 officer arrived at the scene shortly thereafter.  *Id*.   Pursuant to Maryland State Police policy, Mr. Juarez-Sanchez was asked to exit the vehicle prior to the K-9 search.  J.A. 103.  Mr. Juarez-Sanchez used his cell phone while he waited outside the vehicle during the K9 search.  J.A. 104.  The K-9 scan of the vehicle alerted to the presence of narcotics.  J.A. 105. Trooper Miller and another trooper (Trooper Shrout) began to search the interior of the vehicle.  J.A. 106.   The troopers recovered a kilo sized item wrapped in black tape inside of a McDonald's

4

bag, from the back of where the glove compartment had been removed. J.A. 106-107. The Troopers also recovered a similarly shaped kilo package from inside the center console of the vehicle. J.A. 108. The troopers recovered a third kilo shaped package from under the passenger seat. J.A. 109. Additionally, a large amount of money (approximately forty-six thousand dollars) was recovered from the back seat area, hidden in the seat trim of the rear seats. J.A. 109-110. Lastly, three cell phones were seized from Mr. Juarez-Sanchez and the driver of the vehicle. J.A. 113. Trooper Miller later requested warrants to search the cell phones of the two men. *Id*.

Sergeant Jun Lee, of the Maryland State Police, performed a forensic analysis of the three phones recovered from Mr. Juarez-Sanchez and the driver of the vehicle during the arrest. J.A. 323. Sergeant Lee read the content of numerous text messages that were on each phone but did not offer an opinion as to meaning of any text message. J.A. 350-419; J.A. 432-456.

Domingo Ramirez-Roblero testified as a cooperating witness for the government. J.A. 491. Mr. Ramirez-Roblero testified that Mr. Juarez-Sanchez asked him to drive him from Indiana to California. J.A. 494. Mr. Ramirez-Roblero testified that he and Mr. Juarez-Sanchez stayed briefly in California before returning to Indiana, briefly stopping in Illinois. JA. 500-501. Mr. Ramirez-Roblero testified that he and Mr. Juarez-Sanchez drove to California for a

5

subsequent trip, briefly stopping in Kentucky, where he claimed the two men hid

drugs in different parts of the car before the car was stopped by police driving

through Maryland.  J.A. 507-512.

Although Mr. Ramirez-Roblero initially denied ever previously selling drugs

he was repeatedly impeached by defense counsel and eventually admitting that he

had been selling drugs to multiple persons since at least 2019.  J.A. 519-615.

On the fourth day of trial, the government called Trooper Miller back to the

witness stand to testify as an expert witness in "illicit drug trafficking."  J.A. 674.

The district court qualified Trooper Miller as an expert witness over defense

objection.  J.A. 660.  Trooper Miller testified about numerous drug related topics,

including the origin of heroin and fentanyl; the increase in fentanyl use during the

COVID pandemic; how fentanyl is transported in motor vehicles; the difference

between users and traffickers of fentanyl and heroin; the difference between street-

level and major distribution sale of drugs; the modifications made to motor

vehicles to transport drugs; the pricing of drugs near the Mexican border compared

to other locations, including Maryland.  J.A. 675-684.

During closing argument, the prosecutor argued to the jury that the use of

the word "tacos" in a text-message conversation on Mr. Juarez-Sanchez's phone

was evidence of his participation in an international drug transaction with an

unknown Mexican coconspirator.  J.A. 775.

6

At the conclusion of the five-day trial, the jury returned a verdict of guilty as to all counts against Mr. Juarez-Sanchez.

## SUMMARY OF THE ARGUMENT

Insufficient probable cause existed to search Mr. Juarez-Sanchez's cell phones.  Mr. Juarez-Sanchez was the passenger of a car that was stopped for a traffic violation where drugs were found hidden in different parts of the car.  Mr. Juarez-Sanchez's behavior during the traffic stop did not establish probable cause to search his cell phone.  The warrant affidavit to search Mr. Juarez-Sanchez's cell phone did not provide the State court judge with any specific details about Mr. Juarez-Sanchez, any suspicious behavior on his part, or anything about his cell phone that would create a sufficient nexus between his property and the alleged criminal conduct.

The district court abused its discretion by qualifying Trooper Miller as an expert witness in "illicit drug trafficking."  Trooper Miller lacked the necessary experience to testify about certain topics such as the transportation of fentanyl from the southwest border of the United States, along with the manufacture and sources of fentanyl.  Furthermore, the district court's instruction to the jury regarding Trooper Miller's factual and expert testimony was insufficient and likely caused jury confusion.

The prosecutor's remarks in closing argument that a text message on Mr. Juarez-Sanchez's cell phone referring to "tacos" were unduly prejudicial to him and deprived him of his right to a fair trial. The government did not offer any witness at trial to testify to the meaning of any text message found on any phone, including the one about "tacos." The prosecutor's comments were not harmless, and Mr. Juarez-Sanchez did not have the opportunity to address this issue at trial.

## ARGUMENT

### I.    Insufficient Probable Cause Existed to Search Mr. Juarez-Sanchez's Cell Phone.

#### A. Standard of Review

"When the district court denies a motion to suppress, we review its legal conclusions de novo and factual findings for clear error." *United States v. Gondres-Medrano*, 3 F.4th 708 (4th Cir. 2021).

#### B. Mr. Juarez-Sanchez's Behavior During the Traffic Stop Did Not Establish Probable Cause to Search His Cellular Phones.

In *United States v. Orozco*, 41 F. 4th 403, 405 (4th Cir. 2022), this Court held that a warrant affidavit "presented a substantial basis for believing that Orozco was engaged in drug trafficking, and that Orozco's cellphone and SD cards would contain evidence of that criminal activity." In *Orozco*, the driver, and sole occupant of the vehicle, was pulled over for a traffic violation. *Id*. at 406. The driver did not have a license and quickly exited the GPS application he was using on the cellphone when asked by police where he was headed. *Id*. The defendant

was "sweating profusely" and shaking nervously during the encounter. *Id*. Police noted that the dashboard to the card appeared to have been tampered with. *Id*. A subsequent K9 search of the car alerted to the presence of narcotics. *Id*. The defendant gave consent to search the vehicle and officers recovered over one hundred thousand dollars in cash. *Id*. Officers arrested the defendant for driving without a license and took possession of his two cell phones. *Id*.

The defendant was being searched at the police station when five micro-SD cards fell onto the floor. *Id*. at 406. The defendant ate one SD card and made another inoperable by putting it in his mouth. *Id*. The officers applied for a search warrant for the remaining cards, which authorized them to search for "records of illegal drug activities, documents, photographs....and other evidence of drug trafficking." *Id*. at 407. During the search officers recovered images of child pornography. *Id*. Officers then sought a second warrant for the SD cards, where additional images of child pornography were located. *Id*. Lastly, officers sought a third warrant for the defendant's smartphone, where more images of child pornography were located. *Id*.

In this case, unlike the defendant in *Orozco*, Mr. Juarez-Sanchez's behavior did not establish probable cause to search his cellular phones. The first major distinction is that Mr. Juarez-Sanchez was the passenger, not the driver of the vehicle. J.A. 94. Mr. Juarez-Sanchez should not be presumed to know the

9

contents of a vehicle in which he is a passenger.  Trooper Miller did not interact

with Mr. Juarez-Sanchez and did not ask him any questions when he approached

the vehicle.  J.A. 98-99.  Trooper Miller did not testify that he noticed anything

suspicious about Mr. Juarez-Sanchez, unlike the defendant in *Orozco*.  More

specifically, Trooper Miller testified that there were no visible drugs or

paraphernalia in the car, that Mr. Juarez-Sanchez made no furtive or sudden

movements, that he [Juarez-Sanchez] made no attempt to run or flee the scene

during the encounter and he was *allowed* to use his cell phone while officers

searched the car.  J.A. 118-120.  In other words, Mr. Juarez-Sanchez's behavior

was completely consistent with someone who had nothing to hide.

The driver, on the other hand, was in a completely different position than

Mr. Juarez-Sanchez.  It was entirely reasonable for Trooper Miller to suspect that

the driver may have been involved in some sort of nefarious activity, based on his

physical reactions and the numerous irrelevant stories he was recounting to the

officer.  The same cannot be said for Mr. Juarez-Sanchez.  Most importantly, the

drugs were hidden in a car driven by someone else and were not in plain view of

Mr. Juarez-Sanchez.  Simply put, there simply was no objective evidence to

suggest that Mr. Juarez-Sanchez was a participant in any criminal activity.

### C. The Warrant Affidavit Does Not Provide a Sufficient Nexus Between Mr. Juarez's Cell Phone and the Alleged Criminal Conduct.

In *Orozco*, the police officers took careful, measured steps prior to seeking a warrant to search the defendant's cell phone and SD cards. There was ample probable cause for officers to believe that the defendant in *Orozco* was involved in suspected criminal activity: he was the sole occupant of the vehicle; his extreme nervousness during the encounter; his immediate manipulation of his GPS on his cellphone when the officers approached; and the K9 alert to the presence of narcotics. 41 F. 4th at 406. In this case, Trooper Miller had probable cause to search the driver, the car, and the driver's cell phone, but not Mr. Juarez-Ramirez's personal property. "Probable cause to believe that a person is engaged in criminal activity is not carte blanche to search all their personal effects. There must be some nexus between the suspected crime and the place to be searched – a substantial likelihood that evidence of a crime will be found in a particular place." *41 F.4th* at 409. (internal citations omitted).

In the affidavit to search the cell phones recovered from Mr. Juarez-Sanchez, Trooper Miller did not provide a sufficient factual basis which established probable cause to search Mr. Juarez-Sanchez's cell phone. Notably, the narrative in the affidavit section of the warrant does not contain *any* particularized facts with respect to Mr. Juarez-Sanchez. J.A. 59-60. The affidavit section only briefly mentions that there was a K9 hit on the vehicle and that drugs were found hidden

11

inside. *Id*.   In short, none of these reasons, or any other reason provided by Trooper Miller in the affidavit, established probable cause to search Mr. Juarez-Sanchez's cell phone.

Even assuming arguendo, that Trooper Miller had probable cause to search the driver's cell phone, that same probable cause did not extend to Mr. Juarez-Sanchez.  None of the reasons cited in the warrant are applicable in this case to Mr. Juarez-Sanchez.  In *Orozco*, the police provided a detailed account of the traffic stop and reason for the search.  Here, Trooper Miller simply writes that the K9 alerted to the presence of narcotics in the car and that it was searched.  Nothing is specifically mentioned about Mr. Juarez-Sanchez's behavior or any other relevant circumstances that would indicate that the search of his phone was legally justified.

## II.    The District Court Abused Its Discretion by Qualifying Trooper Miller as an Expert Witness in Illicit Drug Trafficking.

### A. Standard of Review

"We review a district court's decision to qualify an expert witness, as well as the admission of such testimony, for abuse of discretion." *United States v. Garcia*, 752 F.3d 382 (4th Cir. 2014)

### B. Trooper Miller's Prior Experience Was Insufficient for Him to Qualify as an Expert Witness

In *United States v. Garcia*, 752 F.3d 382 (4th Cir. 2014), this Court upheld the district court's decision to qualify an FBI agent who had not previously been qualified as an expert witness in interpreting drug code.  In its analysis, the Garcia

12

Court focused on the "quality" of the agent's prior experience, and her ability "to learn to understand the vernacular used by drug traffickers." *Id*. at 391. (internal citations omitted). In this case, the defense objected to Trooper Miller being qualified as an expert witness in illicit drug trafficking based on his lack of experience. J.A. 660. Specifically, the defense challenged Trooper Miller's qualifications to testify about the transportation of fentanyl from the southwest border of the United States, along with the manufacture and sources of fentanyl. J.A. 661.

In *Garcia*, the agent had "monitored dozens of wiretaps, listening to thousands of intercepted phone calls in the process." 752 F.3d at 391. Here, Trooper Miller had only previously testified once in State court as an expert witness in 2005[1], where presumably he did not testify about the manufacture and transportation of fentanyl from the Southwest border. Trooper Miller did not receive any official training with respect to the pricing of fentanyl and heroin, only "intelligence information gathered by task force members between Baltimore and say Garrett County in Maryland." J.A. 656. Trooper Miller, a law enforcement officer working primarily in the State of Maryland, should not have been qualified as an expert witness to discuss topics such as the wholesale price of fentanyl in other States, or the manufacture or transportation of fentanyl from the Southwest

---

[1] J.A. 655-656.

border.  Unlike the agent in *Garcia*, Trooper Miller did not have the same quality of prior experience and his expert testimony should have been disallowed or restricted by the district court.

## C. The instruction given by the district court was insufficient to prevent the strong likelihood of jury confusion

In *United States v. Smith*, 919 F. 3d 825 (4th Cir. 2019), this court cautioned that "dual role testimony…requires a determination of whether its probative value is outweighed by the risk of unfair prejudice or jury confusion."  In *Smith*, an FBI Agent testified about his role in the investigation of a Baltimore prison gang, as well as testifying as an expert witness by interpreting certain jail calls made by the defendant.  *Id*. at 833.  In *Smith*, the district court "gave to the jury a long cautionary instruction emphasizing the importance of separating fact testimony from expert opinions."  *Id*.

In this case, the instruction given by the district court did little to minimize the strong likelihood of jury confusion.  Here, the district court instructed the jury that Trooper Miller would be qualified as an expert in illicit drug trafficking, and they were instructed to disregard his prior testimony about the role he played in the traffic stop.  J.A. 675.  However, the nature of Trooper Miller's expert testimony was "most likely highly influential in the jury's evaluation of the Government's case…" 752 F.3d at 392, and the Court's instruction did not sufficiently safeguard against the likelihood of jury confusion.

14

For example, Trooper Miller testified during the expert portion of his testimony that he makes *daily* traffic stops involving fentanyl, and that the interstates in Maryland are *regularly* used to traffic large amounts of fentanyl.  J.A. 676.  Additionally, Trooper Miller also testified about modifications made to vehicles that he's encountered in traffic stops that contain hidden compartments to hide drugs.  J.A. 680.  Trooper Miller informed the jury that fentanyl is transported into the United States across the borders of California, Texas, and Arizona.  J.A. 678.  Furthermore, Trooper Miller offered his opinion about certain drug trends in Maryland, particular the distribution and use trends and the lower cost of fentanyl in Baltimore compared the rest of the State.  J.A. 681-685.

Trooper Miller's expert testimony blended elements of his prior factual testimony which likely caused jury confusion.  The court's instruction was inadequate and did not make clear which portions of Miller's expert testimony did not refer to his factual testimony.  Specifically, many aspects of Trooper Miller's expert testimony, i.e., that he deals with fentanyl daily, and that the Maryland highways are frequently used to transport drugs such as fentanyl might lead a reasonable juror to believe that he conducted the traffic stop involving Mr. Juarez-Sanchez for similar reasons.  Furthermore, Trooper Miller's expert testimony regarding the distribution of fentanyl in Maryland (particularly in Baltimore) made it seem that the drugs found in the car in this case were destined for distribution

and use in Maryland, without any supporting evidence.  Trooper Miller's testimony

that fentanyl is typically transported from Mexico into States such as California

likely caused jury confusion in a case where a cooperating witness testified that he

was recruited by Mr. Juarez-Sanchez to drive to California to pick up drugs and

send money to Mexico.  Moreover, Trooper Miller did not testify about the

suspected origin or destination of the drugs in his factual testimony, and his expert

testimony likely caused jury confusion.

III.    **The prosecutor's remarks in closing argument that Mr. Sanchez's text message about "tacos" was a code to describe his participation in an international drug transaction unduly prejudiced Mr. Juarez-Sanchez.**

**A. Standard of Review**

"In determining whether a defendant's due process rights were violated by a prosecutor's closing argument, we consider (1) whether the remarks were in fact improper, and (2) if so, whether the improper remarks so prejudiced the defendant's substantial rights that the defendant was denied a fair trial."

*United States v. Saint Louis*, 889 F.3d 145 (4th Cir. 2018).

**B. The prosecutor's comments during closing argument constitute reversible error.**

In *United States v. Wilson*, 135 F.3d 291 (4th Cir. 1998), this Court explained

its use of a "two-pronged test for determining whether a prosecutor's misconduct

in closing argument so infected the trial with unfairness to make the resulting

conviction a denial of due process."  The Court explained that "a defendant must

show (1) that the prosecutor's remarks were improper and [2] that they

prejudicially affected the defendant's substantial rights so as to deprive him of a fair trial." *Id.*  In *Wilson*, this Court vacated the conviction of a defendant after the prosecutor mentioned in closing argument that the defendant murdered a man when he shot at the vehicle he was driving.  *Id.* at 297.  However, the government did not present any testimony that the body of the driver of a car, allegedly shot at by the defendant, had ever been recovered or even had gunshot wounds.  *Id.* at 296.  This Court held that "a prosecutor may argue that the evidence gives rise to an inference, but the suggested inference must be reasonably drawn from the facts in evidence."  *Id.*

In this case, the prosecutor suggested that Mr. Juarez-Sanchez's use of the word "tacos" in a text message was code for an international drug transaction between him and an unknown Mexican coconspirator.  J.A. 775.  Although the trial judge sustained defense counsel's objection, the prosecutor followed up her "tacos" comment with a commentary about the alleged illicit content of some other text messages on the phone to argue to the jury that he was engaged in multiple drug transactions during the cross-country trip.  J.A. 776.  It was improper for the prosecutor to argue to the jury that the "tacos" text message was code word for a drug transaction because the "argument was not based on record evidence or any reasonable inference that could be drawn from it."  135 F.3d at 298.  The government did not offer any witness, expert or otherwise, to explain whether the

word "tacos" was a drug code, and whether Mr. Juarez-Sanchez was acting in

concert with any Mexican co-conspirators.   The only mention of the "tacos" text

message during the trial was when Sergeant Lee, the forensic analyst that extracted

the message, read it into the record.  J.A. 360.  Neither Sergeant Lee or any other

government witness offered an opinion as to the meaning of the text message, or

with whom the defendant was presumably communicating, where that person was

located, or their nationality.  If for example, the government had provided notice

that it intended to offer an expert to opine as to the meaning of "tacos" in the text

message, that witness would have had to explain the basis of their opinion and the

methodology used to reach that conclusion.  In the context of a closing argument,

Mr. Juarez-Sanchez did not have the opportunity to present an alternative

explanation or fight back against the government's interpretation of the text

message.

## C. The Prosecutor's Comments Were Not Harmless Error.

The government may argue that the evidence against Mr. Juarez-Sanchez

was substantial, and the prosecutor's remarks in closing argument amounted to

harmless error.  Mr. Juarez-Sanchez disagrees.  As previously mentioned, the

government used the cooperator testimony of Mr. Domingo Roblero to support its

theory of the case; that Mr. Juarez-Sanchez traveled across the country to pick up

narcotics.  However, Mr. Roblero was impeached about his failure to disclose to

the government his prior involvement in the drug trade, making the veracity of his testimony an issue for the jury to decide.

Assuming arguendo, that the jury believed Roblero's testimony about being recruited to drive Mr. Juarez-Sanchez across country, he also testified that he did not personally witness Mr. Juarez-Sanchez doing business with anyone during the trip. J.A. 499- 501; 507-510. Thus, there was simply no evidence placed before the jury that the "tacos" text message on Mr. Juarez-Sanchez's phone was proof of his involvement in an international drug transaction with a Mexican coconspirator. In this case, the owner and origin of the drugs in the car was left for the jury to decide.

The prosecution's argument that the "tacos" text message is evidence of Mr. Juarez-Sanchez's participation in an international drug transaction was unduly prejudicial, and substantially affected his rights and deprived him of a fair trial.

## CONCLUSION

Insufficient probable cause existed to search Mr. Juarez-Sanchez's cell phone. Mr. Juarez-Sanchez was the passenger in a car stopped for a routine traffic violation. Trooper Miller primarily interacted with the driver of the vehicle and did not notice anything suspicious about Mr. Juarez-Sanchez. Mr. Juarez-Sanchez was not visibly nervous nor were there any drugs in plain sight in the vehicle. Trooper Miller's request for a warrant to search Mr. Juarez's cell phone was not

supported by probable cause. Even if probable cause existed as to the driver of the vehicle, that same probable cause does not automatically extend to Mr. Juarez-Sanchez absent some specific behavior on his part. This Court should hold that the search of Mr. Juarez-Sanchez's cell phones was unlawful, that the case be remanded, and that the government be prohibited from using the contents of his cell phones in any subsequent trial.

The district court abused its discretion by qualifying Trooper Miller as an expert witness in illicit drug trafficking. Miller did not possess sufficient expertise to testify about the manufacture, origin, or transportation of fentanyl into the United States. Trooper Miller did not receive any formal training on many of the topics on which he offered an expert opinion. Moreover, the instruction given to the jury by the court to disregard his prior testimony was insufficient to prevent the likelihood of jury confusion. Trooper Miller's expert testimony blended elements of his prior factual testimony which likely caused jury confusion. Specifically, his expert testimony gave the jury the impression that he knew or suspected the origin and destination of the drugs when he stopped the car in Maryland. Trooper Miller's testimony was likely highly influential to the jury's consideration of the case. Thus, Mr. Juarez-Sanchez should be given a new trial because Trooper Miller's fact and expert testimony were blended, and the instruction given by the district court was inadequate to prevent the strong likelihood of jury confusion.

The prosecutor's comments about the use of the word "tacos" in a text message on Mr. Juarez-Sanchez's phone were improper and deprived him of a fair trial. The government did not offer any witness, expert or otherwise, to explain whether the word "tacos" was a drug code, and whether Mr. Juarez-Sanchez was acting in concert with any Mexican co-conspirators. If the government seeks to have a witness opine about the meaning of a text message, it has an obligation to provide the basis and methodology of the witness' opinion. The prosecutor's comments were not harmless error, because there was no evidence presented during the prosecution's case to suggest that "tacos" were in fact a code for drugs or an international drug transaction. The prosecution argument, mentioned for the first time in the case during closing argument, that "tacos" had another coded meaning, did not allow the defense the opportunity to appropriately address or fight back against this assertion by the government. Therefore, this Court should reverse Mr. Juarez-Sanchez's conviction and order a new trial.

## REQUEST FOR ORAL ARGUMENT

The Appellant requests oral argument on the matters presented in this appeal.

Respectfully submitted on February 21, 2023,

/s/ Alfred Guillaume III
Alfred Guillaume III, Esq.
Law Offices of Alfred Guillaume III, LLC
6305 Ivy Ln., Suite 700
Greenbelt, MD 20770
(202) 321-0549
*For Appellant Alexander Juarez-Sanchez*